## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| DAMON LANDOR, | |
| Plaintiff, | |
| v. | Hon. Judge _____ |
| LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, a public entity, | Civil Action No.: _____ |
| JAMES M. LEBLANC, in his official capacity as Secretary thereof, and individually, | **COMPLAINT AND JURY DEMAND** |
| RAYMOND LABORDE CORRECTIONAL CENTER, a state prison, | |
| MARCUS MYERS, in his official capacity as Warden of thereof, and individually, | |
| JOHN DOES 1-10 (fictitious names), and | |
| ABC ENTITIES 1-10 (fictitious entities), | |
| Defendants. | |

## COMPLAINT AND JURY DEMAND

*This action arises from Defendants' forced shearing of Plaintiff's hair, in violation of Plaintiff's sincerely held religious beliefs as a practicing Rastafarian, and thus, in violation of the Free Exercise Clause of the First Amendment to the Constitution of the United States. This action alleges violations of the Religious Land Use and Institutionalized Persons Act (RLUIPA) and the denial of Plaintiff's rights under the First, Eighth, and Fourteenth Amendments to the Constitution of the United States.*

Plaintiff DAMON LANDOR, by and through his attorneys, Casey Denson, Esq. of Casey Denson Law, LLC, and Rook E. Ringer, Esq. of Lento Law Group, P.C., bring this action for damages and other legal and equitable relief against Defendants LOUISIANA DEPARTMENT OF PUBLIC SAFETY & CORRECTIONS, JAMES M. LEBLANC, RAYMOND LABORDE CORRECTIONAL CENTER, MARCUS MYERS, JOHN DOES 1-10, and ABC ENTITIES 1-10, (collectively, "Defendants"), alleging as follows:

## JURISDICTION AND VENUE

1.     Plaintiff brings this action pursuant to the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") codified at 42 U.S.C. §§ 2000cc *et seq*.

2.     This is also an action to redress the deprivation of Plaintiff's constitutional rights under the First, Eighth, and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. § 1983.

3.     This Court has subject-matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§ 1331 and 1343.

4.     This Court also has supplemental jurisdiction over Plaintiff's related state claims pursuant to 28 U.S.C. § 1367(a), as such claims are so related to the constitutional and federal statutory claims that they form part of the same case or controversy and arise out of a common nucleus of operative fact.

5.     Venue is proper in this district pursuant to 28 U.S.C. 1391(b)(1) as all Defendants reside in the State of Louisiana and, for purposes of venue, Defendants

Louisiana Department of Public Safety & Corrections and James M. LeBlanc reside within the Middle District of Louisiana, specifically, in Baton Rouge.

## PARTIES

6.      At all times relevant hereto, Plaintiff Damon Landor is an adult resident citizen of the City of Slidell within St. Tammany Parish, State of Louisiana.

7.      At all times relevant hereto, Defendant Louisiana Department of Public Safety & Corrections (hereinafter, "LA DoPS&C") is a public entity and state department responsible for the incarceration of inmates and the management of state prison facilities within the State of Louisiana. The LA DoPS&C is headquartered within the Middle District of Louisiana, with a physical address of 504 Mayflower Street, Baton Rouge, Louisiana 70802, and a mailing address for service of process at P.O. Box 94304, Baton Rouge, Louisiana 70804-9304.

8.      At all times relevant hereto, Defendant James M. LeBlanc is, upon information and belief, an adult resident citizen of the City of Baton Rouge, parish seat of East Baton Rouge Parish, State of Louisiana. Defendant LeBlanc is, and was at the time of the occurrences herein complained of, the Secretary of the LA DoPS&C.

9.      At all times relevant hereto, Defendant Raymond Laborde Correctional Center ("RLCC"), formerly the Avoyelles Correctional Center, is a Louisiana state prison under the operation and control of the LA DoPS&C, located at 1630 Prison Road, City of Cottonport within Avoyelles Parish, State of Louisiana 71327.

3

10.     At all times relevant hereto, Defendant Marcus Myers is an adult resident citizen of the State of Louisiana. Defendant Myers is, and was the time of the occurrences herein complained of, the Warden of the RLCC.

11.     At all times relevant hereto, Defendants John Does 1-10 and ABC Entities 1-10 are the fictitious name for individuals and entities believed to have contributed in some relevant and material way to Plaintiff's causes of action as alleged herein, but whose true identities are presently unknown to Plaintiff. Plaintiff will seek leave to amend his complaint to more fully identify these Defendants after conducting discovery, should the need arise.

## APPLICABLE LAW AND POLICY

12.     The Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA") codified at 42 U.S.C. §§ 2000cc *et seq.*, provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person –
>
> (1) is in furtherance of a compelling governmental interest; *and*
>
> (2) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. § 2000cc-1(a). (Emphasis added).

13.     Regarding the scope of the application of RLUIPA, unlike its sister statute – the Religious Freedom Restoration Act of 1993, which has been held to be unconstitutional when applied to the states (*see*, *City of Boerne v. Flores*, 521 U.S. 507

4

(1997)), RLUIPA does indeed apply to state actors, specifically, and as relevant here, "in any case in which – (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b).

14.     With respect to relief under the RLUIPA, 42 U.S.C. § 2000cc-2 makes clear that, "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government."

15.     The First Amendment to the United States Constitution provides in pertinent part, that "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof…*" (Emphasis added).

16.     Further, the Eighth Amendment to the United States Constitution provides that, "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted.*" (Emphasis added).

17.     Further, the Fourteenth Amendment to the United States Constitution provides, in relevant part that:

> No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> U.S. Const. amend. XIV, § 1.

18.     Finally, 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any

rights, privileges, or immunities secured by the
Constitution and laws, shall be liable to the party injured
in an action at law, suit in equity, or other proper
proceeding for redress...

19.    The Fourteenth Amendment to the United States Constitution provides in

pertinent part that no State shall "deny to any person within its jurisdiction the equal

protection of the laws." U.S. Const. amend. XIV, § 1.

## GENERAL FACTUAL ALLEGATIONS

20.    Plaintiff, Damon Landor, is a practicing Rastafarian.

21.    Consistent with Plaintiff's sincerely held religious beliefs as a Rastafarian,

Plaintiff abides by the Nazarite Vow – the biblical oath taken by Samson – which

prohibits, among other things, the cutting of one's hair.

22.    This hair-cutting prohibition is derived from Numbers 6:3-7, which provides,

"During the entire period of their Nazirite vow, no razor may be used on their

head. They must be holy until the period of their dedication to the Lord is over; they

must let their hair grow long."

23.    Given Plaintiff's sincerely held religious beliefs, Plaintiff abided by this

provision of the Nazarite vow, and had not, prior to the occurrence complained of

herein, cut his hair for nearly two decades.

24.    As a result, Plaintiff's hair grew into long locks, commonly referred to as

"dreadlocks", however, this term has become disfavored and is now considered by

many to be derogatory.

25.    On December 28, 2020, Plaintiff was transported to Defendant Raymond Laborde Correctional Center ("RLCC") from LaSalle Correctional Center in Olla, Louisiana.

26.    Prior to his incarceration in LaSalle, Plaintiff had previously been housed within the St. Tammany Parish Detention Center from August 7, 2020, to September 21, 2020, whereupon he was transferred to LaSalle where he stayed until his December 28, 2020, transfer to the RLCC.

27.    Although LaSalle Correctional Center placed Plaintiff in lockdown sometime in late Fall of 2020 after Plaintiff refused to cut his hair, Plaintiff was never, while incarcerated at St. Tammany Parish Detention Center or LaSalle Correctional Center, forced to cut his hair against his will.

28.    In fact, prison administrators at both St. Tammany Parish Detention Center and LaSalle Correctional Center were fairly accommodating with respect to Plaintiff's sincerely held religious beliefs as a Rastafarian, permitting him to wear a "rastacap" (also called a rasta "crown") to contain his locks and accommodating his religious dietary restrictions.

29.    LaSalle Correctional Center even amended its inmate grooming standards in response to Plaintiff lodging a complaint with respect to same.

30.    Specifically, after Plaintiff filed a formal complaint pursuant to Defendant LA DoSP&C's Administrative Remedy Procedure, alleging that LaSalle Correctional Center's grooming policies violated Plaintiff's rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), on December 10, 2020, LaSalle

Correctional issued a written response to Plaintiff's grievance, stating in relevant part that, even though LaSalle Correctional Center was not subject to RLUIPA given that it is a <u>privately</u> owned and operated prison, the facility would be amending its grooming standards so as to satisfy Plaintiff's desired relief.

31.    Poignantly, Major John Stuckey, who authored LaSalle's response to Plaintiff, noted, "We understand that this industry is ever changing, and adaptations must be made to maintain a safe and secure environment for offenders, correctional staff, and the general public while maintaining order within the institution."

32.    Unfortunately, accommodations for Plaintiff's sincerely held religious beliefs with respect to his hair ended when Plaintiff arrived at Defendant RLCC on December 28, 2020.

33.    Upon arrival at RLCC, Plaintiff informed the guard conducting the inmate intake that he was a practicing Rastafarian and presented the guard with various federal and state forms regarding his religious accommodations as a Rastafarian, as well as providing him with a copy of the Fifth Circuit Court of Appeals' opinion in the matter *Ware v. Louisiana Department of Corrections*, 866 F.3d 263 (2017), wherein on appeal by the plaintiff – a fellow Rastafarian state inmate – the Fifth Circuit reversed a lower court's ruling, and found that the Department's grooming policies which prohibited "dreadlocks", violated RLUIPA.

34.    The RLCC guard took these materials from Plaintiff, threw them away, and proceeded to summon Defendant Marcus Myers, Warden of the RLCC (hereinafter "Warden Myers").

35.    Warden Myers proceeded to interrogate Plaintiff about his religious beliefs and asked whether Plaintiff had any documentation regarding his religious beliefs from the sentencing judge.

36.    Plaintiff responded that he did not, but that he could contact the lawyer who represented him throughout the criminal matter to obtain said documents.

37.    Warden Myers remarked in response, "Too late for that," and instructed nearby corrections officers to escort Plaintiff to another room where Plaintiff was forcibly placed in a chair, handcuffed to that chair, and held down by two corrections officers while another individual who appeared to be a fellow inmate proceeded to shear Plaintiff's hair, cutting his locks off completely and shaving him totally bald.

38.    To visualize just how significant a loss this was to Plaintiff, refer to **EXHIBIT "A"** annexed hereto, which displays Plaintiff's inmate identification card issued by Defendants LA DoPS&C and the RLCC and showing a headshot of Plaintiff with his newly-hairless head, juxtaposed beside a photo of Plaintiff taken on November 9, 2013.

39.    This November 9, 2013, photo cuts off at Plaintiff's abdomen, but as demonstrated in **EXHIBIT "B"**, which displays a photo of Plaintiff taken on August 3, 2020, just days before his incarceration in St. Tammany Parish Detention Center, Plaintiff's hair visibly hangs to almost knee-length at that time.

40.    Plaintiff was understandably devastated by the loss of his long locks, a remarkable feat on its own, given that he had been growing them for nearly twenty

(20) years, but made all the more devastating for Plaintiff given their religious significance to Plaintiff as a practicing Rastafarian.

41.     Following this haircutting event of December 28, 2020,  Plaintiff was placed in lockdown for the entire duration of his incarceration at RLCC, and he requested a grievance form daily from prison staff such that he could file a complaint in connection with the event, but he was never provided with one.

42.     Plaintiff was ultimately released on January 20, 2021, and he has since begun to regrow his locks, however, it will likely take Plaintiff roughly twenty years to grow them to the length they were before Defendant's forcibly cut them against Plaintiff's will and in violation of his First Amendment rights as a practicing Rastafarian.

## COUNT I
## VIOLATION OF THE RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT of 2000 ("RLUIPA")
### (42 U.S.C. §§ 2000cc *et seq.*)
### As to Defendants Louisiana Department of Public Safety & Corrections, James M. LeBlanc, Raymond Laborde Correctional Center, and Marcus Myers

43.     Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

44.     All Defendants named in this Count have committed acts while acting under color of state law as alleged herein, which infringed upon the sincerely held religious beliefs of Plaintiff, in violation of the Religious Land Use and Institutionalized Persons Act of 2000 (42 U.S.C. §§ 2000cc *et seq.*) (hereinafter, "RLUIPA" or "the Act").

45.     RLUIPA targets two areas of state and local action: land-use regulation, and as relevant here, restrictions on the religious exercise of institutionalized persons.

10

46.    RLUIPA also provides an express private cause of action for appropriate relief against "a government," which, is defined at 42 U.S.C. § 2000cc-5(4), to mean in relevant part:

> (i) a State, county, municipality, or other governmental entity created under the authority of a State;
>
> (ii) any branch, department, agency, instrumentality, or official of an entity listed in clause (i); and
>
> (iii) any other person acting under color of State law...

47.    Thus, per this definition, all Defendants named in this Count are subject to the provisions of RLUIPA, specifically, given that Defendant LA DoPS&C is a "department" of the State of Louisiana per subsection-(ii) cited above, Defendant LeBlanc is a an "official" per subsection-(ii) cited above, Defendant RLCC is perhaps best categorized as an "instrumentality" per subsection-(ii) cited above, and Defendant Myers is also an "official" per subsection-(ii) cited above.

48.    Regarding the protections under RLUIPA for free religious exercise by institutionalized persons, the Act provides in relevant part:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution... even if the burden results from a rule of general applicability...
>
> 42 U.S.C. § 2000cc-1(a).

49.    Specifically, RLUIPA applies, "in any case in which – (1) the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b).

50.    The LA DoPS&C, and thus, all Defendants named in this Count, receives Federal financial assistance from the U.S. Department of Justice, the Social Security Administration, and the Department of Education.

51.    However, the Act's prohibition against the imposition of a substantial burden on the religious exercise of a person residing in or confined to an institution is not limitless, and will only apply:

> [U]nless the government demonstrates that imposition of the burden on that person –
>
> > (1) is in furtherance of a compelling governmental interest; *and*
> >
> > (2) is the least restrictive means of furthering that compelling governmental interest.
>
> 42 U.S.C. § 2000cc-1(a). (Emphasis added).

52.    On July 28, 2017, the Fifth Circuit Court of Appeals, in the matter of *Ware v. Louisiana Department of Corrections*, 866 F.3d 263 (2017) issued a ruling very pertinent to the instant matter.

53.    The plaintiff in *Ware*, Christopher Jerome Ware, was an individual very similarly situated to Plaintiff herein in that he was a practicing Rastafarian and an inmate in the custody of the Louisiana Department of Public Safety & Corrections.

54.    Upon being transferred from a facility run by the Bossier Parish Sheriff to a state prison operated by the LA DoPS&C, Ware became subject to the Department's grooming policies which did not permit "dreadlocks" which Ware, as a practicing Rastafarian, wore. Further, the policies did not allow for any religious exemption.

12

55.    Facing imminent transfer to the LA DoPS&C prison, Ware filed suit against the Department and Secretary LeBlanc under RLUIPA, alleging that the grooming policies imposed a substantial burden on his religious practice of not cutting or styling his hair, and further, were not the least restrictive means of achieving any compelling interest.

56.    Ultimately, the Fifth Circuit held that the LA DoPS&C "failed to meet its burden under RLUIPA of showing both that its grooming policies serve a compelling interest and that they are the least restrictive means of serving any such interest," and as such, rendered judgment in favor of Ware, declaring that the grooming policies as applied to him violated RLUIPA, and further, enjoining the Department from enforcing them against him. 866 F.3d at 274.

57.    Plaintiff maintains that, per the *Ware* decision, which has not been overturned in the four years since its publication, Defendant LA DoPS&C's grooming policy as it was applied to Plaintiff, violated RLUIPA for the very same reasons asserted by Ware himself: it did not serve a compelling governmental interest and it was not the least restrictive means of serving any such interest.

58.    Unfortunately for Plaintiff herein, unlike *Ware*, an injunction in this matter is of no use to Plaintiff because the substantial burden on the religious exercise of Plaintiff effectuated by the action taken by Defendant Myers of Defendant RLCC pursuant to the RLUIPA-violative policies of Defendants LA DoPS&C and LeBlanc – specifically, the forced cutting of Plaintiff's hair against his will and in violation of

his sincerely held religious beliefs as a practicing Rastafarian – has already been imposed.

59.    No injunction or declaratory relief on its own will suffice in the instant matter because Plaintiff has already been irreversibly harmed through the actions of the Defendants named in this Count which have already been established in *Ware* to violate RLUIPA.

60.    Regarding relief under RLUIPA, § 2000cc-2 makes clear that, "A person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain *appropriate relief* against a government," however, "appropriate relief" is not defined anywhere within the body of RLUIPA. (Emphasis added).

61.    The seminal case on the meaning of "appropriate relief" under RLUIPA is the United States Supreme Court matter *Sossamon v. Texas*, 563 U.S. 277 (2011).

62.    In *Sossamon*, the Supreme Court recognized that "'[A]ppropriate relief' is open-ended and ambiguous about what types of relief it includes, as many lower courts have recognized." 563 U.S. at 286.

63.    "Far from clearly identifying money damages," the Court continued, "the word 'appropriate' is inherently context dependent." *Id.*

64.    The Court then proceeded to determine that, "The context here – where the defendant is a sovereign – suggests, if anything, that monetary damages are not 'suitable' or 'proper'." *Id.*

65.    This Court in *Sossamon* focused entirely on the defendants therein in determining that monetary damages were not "appropriate relief," based upon the

fact that the defendants therein were a governmental department and a government official, and therefore enjoyed state sovereign immunity in the absence of an "unequivocal declaration" within the language of RLUIPA that the states were intended to be subject to monetary damages thereunder.

66. It is odd that the Court in *Sossamon* focused its contextual analysis entirely on the defendants therein and highlighted their unique nature as sovereign, when quite literally *every* defendant in every action brought under RLUIPA must be a sovereign as RLUIPA only imposes a restriction on "governments" as defined under § 2000cc-5(4).

67. Rather, the Court in *Sossamon* failed to focus on the unique circumstances of the plaintiff therein, a context which will always be different on a case-by-case basis as different individual plaintiffs in different individual cases bring their unique actions under RLUIPA.

68. Focusing on the Plaintiff's facts in the instant matter, it is clear that the context in which Plaintiff brings this action distinguishes it significantly from *Sossamon* in that "appropriate relief" to Harvey Leroy Sossamon pre-haircut is substantially different than "appropriate relief" to Damon Landor post-haircut under the very same policy of the Defendants named in this Count, which has already been found to violate RLUIPA.

69. The Court in *Sossamon* appeared to have overlooked cases like the Plaintiff's where the substantial burden on the religious exercise resulting from the RLUIPA-

violative policy has already been imposed, the subsequent conduct resulting from said policy has already been taken, as it was taken herein against Plaintiff.

70.    Perhaps then it was for cases such as the Plaintiff's that the United States Legislature, in drafting the language of RLUIPA specifically used the phrase "appropriate relief" in § 2000cc-2(a) when discussing an individual's private cause of action, as opposed to specifically stating that relief was limited to "injunctive or declaratory" relief when an action is brought by the United States to enforce RLUIPA under § 2000cc-2(f).

71.    Although the Supreme Court noted this difference in the language articulating relief for private causes of action as opposed to those brought by the United States to enforce RLUIPA, the Court in *Sossamon* declined to find that this difference represented an "unequivocal statement" that RLUIPA was intended to include a waiver of sovereign immunity to include claims for monetary damages. 563 U.S. at 289.

72.    Plaintiff disagrees that the difference in the specifically articulated language for relief in private causes of action as opposed to those brought by the United States to enforce RLUIPA does not constitute such an "unequivocal statement", as, consistent with "the cardinal principle" of statutory interpretation, "courts 'must give effect, if possible, to every clause and word of a statute'". *Loughrin v. U.S.*, 573 U.S. 351, 358 (2014) (citing, *Williams v. Taylor*, 529 U.S. 362, 404 (2000)).

73.    This is especially true with respect to the difference between the two referenced relief provisions of RLUIPA when you consider them through the lens of another well-

established canon of statutory interpretation – *expressio unius est exclusion alterius* – also called "negative-implication canon", meaning that the "expressi[on] [of] one item of [an] associated group or series excludes another left unmentioned." *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002).

74.     In other words, the expression of "injunctive or declaratory relief" in § 2000cc-2(f) is intended to exclude, through negative implication, monetary damages in actions brought by the United States to enforce RLUIPA.

75.     Why, then, did the Legislature not use the same phrase, "injunctive or declaratory relief" in § 2000cc-2(a) when discussing relief in an individual's private cause of action? Had it done so, monetary relief would have been excluded through negative implication leading to the very same result in *Sossamon*.

76.     But the Legislature did not use the phrase, "injunctive or declaratory relief" in § 2000cc-2(a) when discussing relief in an individual's private cause of action under RLUIPA; rather, they used the broader phrase, "appropriate relief."

77.     "[The Supreme] Court normally interprets a statute in accord with the ordinary meaning of its terms at the time of its enactment." *Bostock v. Clayton County, Georgia*, 140 S.Ct. 1731, 1738 (2020).

78.     Even in *Sossamon* the Court referenced the definition of "appropriate" from Webster's Third New International Dictionary 106 (1993), "(defining 'appropriate' as 'specially suitable: FIT, PROPER')". *Sossamon*, supra. at 286.

79.     In the ten years since the *Sossamon* decision, in light of the aforecited canons of interpretation which the Court in *Sossamon* appeared to disregard, and in light of

17

the distinction between such cases as Mr. Sossamon's or Mr. Ware's where the substantial burden on their religious exercise had not yet been irreversibly imposed and Plaintiff's matter where such a burden had been irreversibly imposed, Plaintiff implores this court to reinterpret RLUIPA's "appropriate relief" provision such that monetary damages are appropriate in limited circumstances where "injunctive or declaratory relief" relief would be moot.

80.     Plaintiff should not be left without legal recourse under RLUIPA simply by virtue of the fact that the very harm which RLUIPA was designed to prevent has already befallen him in an irreversible way.

81.     Such an interpretation would seem to go against the true legislative intent of RLUIPA as articulated by the late Senator Edward "Ted" Kennedy when he first introduced RLUIPA – then S.6687 – to the Senate on July 13, 2000, stating:

> [T]oo often in our society today, thoughtless and insensitive actions by governments at every level interferes with individual religious freedoms, even though no valid public purpose is served by the governmental action. Our goal in proposing this legislation is to reach a reasonable and constitutionally sound balance between respecting the compelling interests of government and protecting the ability of people freely to exercise their religion.

> (*See*, **EXHIBIT "C"** – a true and correct copy of Senator Kennedy and Senator Hatch's introductory remarks on S.6687 from the Congressional Record vol. 146, No. 90, the full text of which begins where highlighted).

**COUNT II**
**VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES**
**(*via* 42 U.S.C. § 1983)**
**As to Defendants Louisiana Department of Public Safety & Corrections, James M. LeBlanc, Raymond Laborde Correctional Center, and**

**Marcus Myers**

82. Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

83. The First Amendment to the Constitution of the United States provides in relevant part that, "Congress shall make no law respecting an establishment of religion, or *prohibiting the free exercise thereof*..." (Emphasis added).

84. First Amendment claims are actionable against the government or any person acting "under color or state law" under 42 U.S.C. § 1983. *See*, for example, *Mayfield v. Texas Dept. of Criminal Justice*, 529 F.3d 599 (2008).

85. All Defendants named in this Count have committed acts while acting under color of state law as alleged herein, which infringed upon the sincerely held religious beliefs of Plaintiff, in violation of his First Amendment right to free exercise.

86. Specifically, Plaintiff's First Amendment right to free exercise of his religion as a practicing Rastafarian was infringed upon through the unconstitutional forced cutting of Plaintiff's hair against his will and in contravention of his sincerely held religious beliefs by Defendants RLCC and Myers' enforcement of a policy by Defendants LA DoPS&C and LeBlanc which was already held by the Fifth Circuit in *Ware*, supra., to be in violation of RLUIPA.

87. Prison regulations that are alleged to encroach upon fundamental constitutional rights are reviewed under the standard set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78 (1987) to determine whether the regulation is "reasonably related to legitimate penological interests". *Id.* at 89.

88.    To that end, the Court in *Turner* considered four factors:

> (1) whether there is a  "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it";
>
> (2) "whether there are alternative means of exercising the right that remain open to prison inmates";
>
> (3) "the impact accommodation... will have on guards and other inmates, and on the allocation of prison resources generally"; and
>
> (4) whether there are "ready alternatives that could fully accommodate[] the prison's rights at de minimis cost to valid penological interests."
>
> *Id.* at 89-91.

89.    Further, *Turner* includes a neutrality requirement – that, "the government objective must be a legitimate and neutral one." *Id.* at 90.

90.    The Fifth Circuit opined in *Mayfield*, supra., that under *Turner*, "rationality is the controlling factor, and a court need not weigh each factor equally." 529 F.3d at 607.

91.    With respect to the first two *Turner* factors as they relate to the grooming policy of Defendants LA DoPS&C and LeBlanc as enforced upon Plaintiff by Defendants RLCC and Myers, the Fifth Circuit has already determined in *Ware*, in conducting an analysis of two substantially similar factors under RLUIPA, that the LA DoPS&C "failed to meet its burden... of showing both that its grooming policies serve a compelling interest and that they are the least restrictive means of serving any such interest..." *Ware*, supra. at 274.

92.    With respect to the third *Turner* factor, accommodation would merely have been allowing Plaintiff to keep his long hair.

93.    The impact of such an accommodation on guards and other inmates, and on the allocation of prison resources would obviously have been little to nothing as the accommodation was not an affirmative one – such as a dietary accommodation where the RLCC would have been required to take steps to provide a special meal to accommodate a religious belief – but rather, a negation accommodation where the RLCC simply had to do nothing to accommodate Plaintiff.

94.    Similarly, with respect to the fourth *Turner* factor, the ready alternative to accommodate Plaintiff would simply have been for Defendants Myers and the RLCC to do nothing, and allow Plaintiff to keep his long hair, just as St. Tammany Parish Detention Center and LaSalle Correctional Center had.

95.    Finally, regarding the requirement from *Turner* that, "the government objective must be a legitimate and neutral one," while the grooming policy of Defendants LA DoPS&C and LeBlanc prohibiting "dreadlocks" may have been a neutral one in that it did not appear to specifically target Rastafarians as opposed to non-Rastafarians who happen to have "dreadlocks", the prohibition has already been determined to be illegitimate by the Fifth Circuit in *Ware*, supra., as alleged earlier herein.

96.    Therefore, applying the *Turner* standard to the facts herein, it is clear that the grooming policy of Defendants LA DoPS&C and LeBlanc as enforced upon Plaintiff by Defendants RLCC and Myers is not "reasonably related to legitimate penological

interests", consistent with the Fifth Circuit's analysis of the very same policy under RLUIPA in *Ware*, supra.

97.    Further, Defendants retaliated against Plaintiff engaging in protected activity when he expressed his religious beliefs and requested accommodations for those beliefs.

98.    Defendants' actions, in cutting Plaintiff's hair despite his protests, were motivated Plaintiff's protected activity.

99.    Thus, all Defendants named in this Count have committed acts while acting under color of state law as alleged herein, which have significantly infringed upon the sincerely held religious beliefs of Plaintiff, in violation of his First Amendment right to free exercise. As a direct and proximate result of this violation of Plaintiff's First Amendment right to free exercise of his religious belief, Plaintiff has suffered various damages.

## COUNT III
## <u>VIOLATION OF THE EIGHTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES</u>
### (*via* 42 U.S.C. § 1983)
### As to Defendants Louisiana Department of Public Safety & Corrections, James M. LeBlanc, Raymond Laborde Correctional Center, and Marcus Myers

100.    Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

101.    The Eighth Amendment to the United States Constitution provides that, "Excessive bail shall not be required, nor excessive fines imposed, *nor cruel and unusual punishments inflicted*." (Emphasis added).

102.    The Supreme Court of the United States articulated in *Wilson v. Seiter*, 501 U.S. 294, 302 (1991), that "Eighth Amendment claims based on official conduct that does not purport to be the penalty formally imposed for a crime", such as the conditions of confinement, may nonetheless be a form of cruel and unusual punishment.

103.    "Whether one characterizes the treatment received by [the prisoner] as inhumane conditions of confinement, failure to attend to his medical needs, or a combination of both, it is appropriate to apply the 'deliberate indifference' standard articulated in *Estelle* [*v. Gamble*, 429 U.S. 97 (1976)]." *Wilson*, supra. at 303, (citing, *LaFaut v. Smith*, 834 F.2d 389, 391-92 (CA4 1987)).

104.    Further, the Fifth Circuit in *Reed v. Wichita Cnty. (Estate of Henson)*, 795 F.3d 456 (5th Cir. 2015) made clear that Eighth Amendment cruel and unusual punishment claims pursued pursuant to the procedural and substantive due process provisions of the Fourteenth Amendment may be brought under two alternative theories: a "condition of confinement" or as an "episodic act or omission", and that there is "no rule barring a plaintiff from pleading both alternative theories[.]" *Id.* at 463-464.

105.    Uniquely, the violation of Plaintiff's Eighth Amendment rights through the deliberate indifference of the Defendants named in this Count to Plaintiff's religious needs constitutes both an unconstitutional condition of confinement and an unconstitutional episodic act or omission.

106.   With respect to "conditions of confinement," this very court explained in *Cleveland v. Gautreaux*, 198 F.Supp.3d 717 (M.D.La. 2016), that, a "challenge to a condition of confinement is a challenge to 'general conditions, practices, rules, or restrictions of [] confinement,'" *Id.* at 733.

107.   Further, "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon [the prisoner]." *Id.* at 734.

108.   Here, Defendants LA DoPS&C and LeBlanc promulgated an unconstitutional grooming policy as a condition of Plaintiff's confinement within the LA DoPS&C-controlled prison, and Defendants RLCC and Myers enforced said condition of confinement upon Plaintiff by cutting his hair against his will and in contravention of his sincerely held religious beliefs.

109.   The Fifth Circuit in *Ware*, supra., already determined that Defendants LA DoPS&C and LeBlanc failed to demonstrate that the very same grooming policy prohibiting "dreadlocks" was reasonably related to a legitimate penological goal and deemed it to violate RLUIPA.

110.   Thus, all Defendants named in this Count violated Plaintiff's constitutional rights under the Eighth Amendment by imposing and enforcing upon him a cruel and unusual condition of confinement.

111.   Additionally, given that this condition of confinement was then effectuated through the conduct of Defendants RLCC and Myers, on December 28, 2020, when

24

Plaintiff's hair was forcibly cut against his will, Plaintiff's complained-of harm may also be characterized as an episodic act or omission.

112.    This court made clear in *Gautreaux*, supra., that in an "episodic act" case, "[t]he relevant question now 'becomes whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge, and intentionality is no longer presumed." *Id.* at 734 (citing, *Reed*, supra. at 463).

113.    This court further explained in *Gautreaux* that, "For such a violation to be found, the official must have 'subjective knowledge of a substantial risk of serious harm to the [prisoner] and responded to that risk with deliberate indifference." *Id.* (citing, *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 650 (5th Cir. 1996)).

114.    Generally, "[d]eliberate indifference is shown when the official knows of and disregards an excessive risk to inmate health or safety," and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Reed*, supra. at 343.

115.    Nothing appears to limit this "risk to inmate health or safety" merely to an inmate's physical health or safety, as opposed to their religious or emotional health or safety.

116.    Further, in the context of deliberate indifference to a serious medical need, such deliberate indifference does exist "where a plaintiff shows that officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs". *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

25

117.    Applying this standard analogously to an inmate's sincerely held religious need, deliberate indifference in such a circumstance should similarly apply where a plaintiff shows that officials refused to accommodate it, ignored his complaints, intentionally treated him in contravention of his beliefs, or engaged in any similar conduct that would evince a wanton disregard for any sincerely held religious need.

118.    Here, Defendants RLCC and Myers not only subjective knowledge of a substantial risk of serious harm to Plaintiff vis-à-vis the way he would be affected given his religious beliefs as a Rastafarian if his hair were to be cut, but further, acted with deliberate indifference to Plaintiff's sincerely held religious needs by ignoring his protestations about cutting his hair, by refusing to accommodate his beliefs by allowing him to keep his long hair, all the while knowing that the very grooming policy which they were enforcing was already deemed violative of RLUIPA in *Ware* under essentially the same circumstances, given that Plaintiff presented the opinion to the intake guard upon arrival.

119.    Arguably then, in light of this knowledge, Defendants RLCC and Myers acted not only deliberately indifferently to Plaintiff's sincerely held religious need, but with malice, as further evidenced by their handcuffing him to a chair while two RLCC guards held him down in order to forcibly cut his hair against his will.

120.    It is clear, therefore, that under both a "condition of confinement" theory and an "episodic act or omission" theory, that all Defendants named in this Count violated Plaintiff's Eighth Amendment rights imposing against him a cruel and unusual condition of confinement in contravention of his sincerely held religious beliefs and

further, maliciously enforcing said cruel and unusual condition of confinement on one given occasion – December 28, 2020 – in deliberate indifference to those religious beliefs of Plaintiff.

121.   As a direct and proximate result of this violation of Plaintiff's Eighth Amendment right to free exercise of his religious belief, Plaintiff has suffered various damages.

**COUNT IV**
**VIOLATION OF THE FOURTEENTH AMENDMENT TO THE
CONSTITUTION OF THE UNITED STATES
FAILURE TO TRAIN AND/OR SUPERVISE**
***(via* 42 U.S.C. § 1983)**
**As to Defendants Louisiana Department of Public Safety & Corrections,
James M. LeBlanc, Raymond Laborde Correctional Center, and
Marcus Myers**

122.   Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

123.   The Fourteenth Amendment to the United States Constitution provides, in relevant part that:

> [N]or shall any State deprive any person of life, liberty, or property, without due process of law;

> U.S. Const. amend. XIV, § 1.

124.   The Supreme Court's interpretation of this, the Due Process Clause, explicates that the amendment provides two different kinds of constitutional protection: procedural due process and substantive due process. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

125.    A violation of either of these kinds of protection may form the basis for a suit under 42 U.S.C. § 1983. *Id.*

126.    The substantive component of the Due Process Clause protects those rights that are "fundamental," that is, rights that are "implicit in the concept of ordered liberty," *Palko v. Connecticut*, 302 U.S. 319, 325 (1937).

127.    The First Amendment right to free religious exercise is one such fundamental right that is protected "against 'certain government actions regardless of the fairness of the procedures used to implement them.'" *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (citing, *Daniels v. Williams*, 474 U.S. 327 (1986)).

128.    Here, all Defendants named in this Count adopted or enforced a policy of inadequate training and/or supervision of its employees and, as a result, this policy caused a violation of Plaintiff's fundamental First Amendment rights in violation of the Due Process Clause of the Fourteenth Amendment.

129.    Specifically, Defendants LA DoPS&C and LeBlanc failed to train and/or supervise Defendants RLCC and Myers as to the new grooming policies of the LA DoPS&C in light of the *Ware* decision which found the LA DoPS&C's prohibition of "dreadlocks" to be in violation of RLUIPA, and subsequently, Defendants RLCC and Myers failed to train and/or supervise their staff regarding same.

130.    The failure of Defendants LA DoPS&C and LeBlanc failed to train and/or supervise Defendants RLCC and Myers with respect to grooming policy changes in light of *Ware*, and the subsequent failure of Defendants RLCC and Myers to train and/or supervise its corrections officers of same, amounted to deliberate indifference

to the fact that inaction would obviously result in the violation of the First Amendment rights of Rastafarian inmates with "dreadlocks" which would otherwise be prohibited under the unconstitutional grooming policy, such as Plaintiff.

131.   The failure of Defendants LA DoPS&C and LeBlanc failed to train and/or supervise Defendants RLCC and Myers with respect to grooming policy changes in light of *Ware*, and the subsequent failure of Defendants RLCC and Myers to train and/or supervise its corrections officers of same, proximately caused the violation of both Plaintiff's First Amendments rights and his rights under the Due Process Clause of the Fourteenth Amendment.

132.   Defendants LA DoPS&C and LeBlanc knew that Defendants RLCC and Myers could confront situations where they would face Rastafarian inmates with "dreadlocks", given that other state prisons under LA DoPS&C's purview already had faced that very situation, as such was the case in *Ware*.

133.   Further, given the decision in *Ware*, Defendants LA DoPS&C and LeBlanc knew that they had a history of mishandling Rastafarian inmates' religious expression through their wearing of "dreadlocks".

134.   Thus, Defendants LA DoPS&C and LeBlanc knew, and thus Defendants RLCC and Myers should also have known, that an employee in that situation will frequently cause a deprivation of a Rastafarian inmate's First Amendment rights by requiring them to cut their hair.

135.   Even despite this knowledge, Defendants LA DoPS&C and LeBlanc acted with deliberate indifference to this risk of depriving their Rastafarian inmates of their

First Amendment rights by requiring them to cut their cut, by failing to adequately train and/or supervise Defendants RLCC and Myers of their obligations in light of *Ware*'s determination that the "dreadlock" prohibition was violative of RLUIPA, and similarly, Defendants RLCC and Myers acted with deliberate indifference to the same risk by failing to train and/or supervise their corrections officers of the very same.

136.   As a direct and proximate result of this violation of these failures of all Defendants named in this Count, Plaintiff's First Amendment fundamental right to free exercise of his religious beliefs was unconstitutionally infringed in violation of the Due Process Clause of the Fourteenth Amendment.

**COUNT V**
**TORTIOUS AND/OR UNCONSTITUTIONAL CONDUCT OF**
**JOHN DOES 1-10 AND ABC ENTITIES 1-10**
**As to Defendants John Does 1-10 and ABC Entities 1-10**

137.   Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

138.   At all times relevant to this action, Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10, are fictitious names for individuals and entities whose identities are unknown at present, but who constitute persons, partnerships, joint ventures, corporations, associations, or other forms of private or public entities who or which participated in the tortious and/or unconstitutional actions of the Defendants described herein, whether by way of their negligence, deliberate indifference, or in other ways as yet undetermined.

139.   As a direct and proximate results of the tortious and/or unconstitutional conduct of Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10, Plaintiff has been

caused to suffer various damages, including and infringement of constitutional rights as alleged elsewhere herein.

140.    Plaintiff alleges an insufficient opportunity to determine the identity of all individuals or entities whose actions or omissions may be potentially responsible in whole or in part for the damages incurred by Plaintiff.

141.    As such, Plaintiff specifically reserves the right to name additional individuals or entities as Defendants to this action, when and if their identities become known to Plaintiff.

### COUNT VI
### VIOLATION OF THE LOUISIANA CONSTITUTION
### AGAINST ALL DEFENDANTS

142.    Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

143.    Article One, Section Two of the Louisiana Constitution of 1974 guarantees that "[n]o person shall be deprived of life, liberty, or property, except by due process of law," Section Seven and Eight Eighth protect the freedom of religion and free expression of religion, and Section Twenty prohibits cruel and unusual punishment.

144.    By reason of the same conduct that violated Plaintiffs' federal constitutional rights, Defendants violated their state constitutional rights to liberty and due process and Defendants violated Plaintiff's right to be free of cruel and unusual punishment.

145.     This conduct resulted in the assaults of Plaintiffs and caused the physical, emotional, and pecuniary damages as described above and below.

31

**COUNT VII**
**SUPPLEMENTAL STATE LAW CLAIM FOR**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**AGAINST ALL DEFENDANTS**

146.   Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

147.   Defendants' conduct, by among other things, knowingly cutting Plaintiff's hair, despite knowing that it was critical to his exercise of his religion, and despite his protests to the cutting of his hair, was extreme and outrageous.

148.   The emotional distress suffered by the Plaintiff was severe.

149.   Defendants desired to inflict severe emotional distress, or knew that severe emotional distress would be certain, or substantially certain, to result from their conduct.

150.   Plaintiff's status as detainee entitled him to a greater degree of protection from Defendants.

151.   Defendants conspired to commit an intentional or willful act as described herein, and are liable *in solido*, with each other, for the damage caused by such act.

152.   As a result of Defendants' unlawful actions, Plaintiff suffered damages including emotional distress.

153.   Defendants are liable for the acts and/or omissions of their agents and employees.

154.   Defendants, either directly, or by and through their agents, directly and proximately caused Plaintiffs' severe injuries, damages and losses.

**COUNT VIII**
**NEGLIGENCE**
**AGAINST ALL DEFENDANTS**

155.    Plaintiff hereby repeats all of the allegations contained in this Complaint thus far above and incorporates same as if fully set forth at length herein.

156.    Defendants, as jailers, had a duty to care for the safety of detainees in their custody, and protect detainees in their custody from harm.

157.    Plaintiff was a detainee in the custody of Defendants.

158.    Defendants breached this duty with their acts and omissions, when they cut Plaintiff's hair despite his protests, and knowing of their rights and responsibilities to Plaintiff.

159.    These acts and omissions created an unreasonable risk of injury to Plaintiff.

160.    The risks and harms that Defendants caused were within the scope of protection afforded by the duties they owed to Plaintiff.

161.    Defendants knew or should have known of these risks, but failed to take steps to ensure that Plaintiff would not be harmed.

162.    Defendants' breach of their duty of care, through their acts and omissions, resulted in Plaintiff's injuries.

163.    Defendants are liable for the acts and/or omissions of their agents and employees.

 Defendants, either directly, or by and through its agents, directly and proximately caused Plaintiff's injuries, damages and losses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff DAMON LANDOR prays for relief as to all counts as follows:

(1) For declaratory and injunctive relief;

(2) For judgement against the Defendants jointly, severally, and alternatively, for general, compensatory, and punitive damages as appropriate, with interest;

(3) Reasonable attorney's fees and costs of suit pursuant to 42 U.S.C. 1988; and

(4) For such other further relief as the Court may deem equitable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: <u>December 27, 2021</u>        CASEY DENSON LAW, LLC

_____
CASEY ROSE DENSON, ESQUIRE
LA State Attorney Roll No. 33363
MERCEDES ANN TOWNSEND, ESQUIRE
LA State Attorney Roll No. 39054
4601 Dryades Street
New Orleans, LA 70115
504.618.8715 (Office)
504.534.3380 (Fax)

cdenson@caseydensonlaw.com
mtownsend@caseydensonlaw.com
Attorneys for Plaintiff
TRIAL COUNSEL OF RECORD


LENTO LAW GROUP, P.C.


_____
ROOK ELIZABETH RINGER, ESQUIRE
FL State Bar No. 1015698
(Pro Hac Vice to be applied for)
222 San Marco Ave., Ste. C
St. Augustine, FL 32084
904.602.9400 (Office)
904.299.5400 (Fax)
reringer@lentolawgroup.com
Attorney for Plaintiff
TRIAL COUNSEL