# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **DAMON LANDOR** | * | **CIVIL ACTION** |
| | * | |
| **VERSUS** | * | **NUMBER 21-733-SDD-SDJ** |
| | * | |
| **LOUISIANA DEPARTMENT OF** | * | **CHIEF JUDGE SHELLY D. DICK** |
| **PUBLIC SAFETY & CORRECTIONS,** | * | |
| **a public entity, ET AL.** | * | **MAG. JUDGE SCOTT D. JOHNSON** |

**************************************

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS FOR LACK OF JURISDICTION AND FOR FAILURE TO STATE A CAUSE OF ACTION

Far from a "short and plain statement of his claim", Plaintiff's shotgun complaint[1] is 35 pages long, names four (4) defendants[2] and fictitiously names twenty (20) defendants.[3]  The Complaint contains eight (8) counts, with each count "repeat[ing] all of the allegations contained in this Complaint thus far above and incorporat[ing] the same as if fully set forth at length herein".[4]

> The Fifth Circuit specifically discourages shotgun pleading "where the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick." *S. Leasing Partners, Ltd. v. McMullan*, 801 F.2d 783, 788 (5th Cir. 1986). Shotgun pleadings are considered so objectionable, that they can even give rise to Rule 11 sanctions. *See id*.[5]

Herein, the four named defendants explain why this Complaint must be dismissed, in its entirety, and why certain claims must be dismissed <u>without leave to amend</u>.

---

[1] "[S]hotgun pleadings contain several counts within a complaint with each count 'incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.' " *Copeland v. Axion Mortg. Grp. LLC*, No. 1:16CV159-HSO-JCG, 2016 WL 4250431, at *4 (S.D. Miss. Aug. 11, 2016) (quoting *Strategic Income Fund, L.L.C. v. Spear, Leeds & Kellog Corp.*, 305 F.3d 1293, 1295 (11th Cir. 2002)) (additional internal citation and quotation marks omitted)).

[2] Doc. 1 at ¶7-10 (joining named defendants).

[3] *Id.* at ¶11 (joining fictitious defendants).

[4] Doc. 1, ¶43 (Count I), ¶82 (Count II), ¶100 (Count III), ¶122 (Count IV), ¶137 (Count V), ¶142 (Count VI), ¶147 (Count VII), ¶155 (Count VIII).

[5] *Copeland*, 2016 WL 4250431, at *4 (additional citations omitted).

## I.  Standard of Review

"A motion to dismiss under Rule 12(b)(1) is analyzed under the same standard as a motion to dismiss under Rule 12(b)(6)."[6]

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id*., at 555, 127 S.Ct. 1955 (citing *Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555, 127 S.Ct. 1955. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557, 127 S.Ct. 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.,* at 570, 127 S.Ct. 1955. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.,* at 556, 127 S.Ct. 1955. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.,* at 557, 127 S.Ct. 1955 (brackets omitted).[7]

It is within this Court's discretion to deny leave to amend on claims that are "futile" – claims that, as a matter of law, cannot be fixed by the pleading of different or additional facts.

---

[6] *Hall v. Louisiana*, 974 F. Supp. 2d 978, 985 (M.D. La. 2013) (citing *Benton v. U.S.*, 960 F.2d 19, 21 (5th Cir.1992)).
[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007).

<u>**MOTION TO DISMISS FOR LACK OF
SUBJECT MATTER JURISDICTION**</u>

This Honorable Court lacks jurisdiction over the following claims:

1. All claims for prospective equitable (non-monetary) relief,

2. Claims for money damages under RLUIPA,

3. §1983 claims against DPSC, and

4. State law claims against DPSC.

As explained below, these jurisdictional defects cannot be cured by an amendment and the claims

must be dismissed.

**II.    Plaintiff lacks standing to sue for prospective equitable relief.**

Plaintiff prays for declaratory and injunctive relief as well as "[f]or such other further relief

as the Court may deem equitable and just."[8] All claims for prospective relief, including

declaratory, injunctive, and other equitable (non-monetary) relief, must be dismissed because the

Plaintiff lacks standing to sue for prospective relief.

> " 'No principle is more fundamental to the judiciary's proper role in our system of
> government than the constitutional limitation of federal-court jurisdiction to actual
> cases or controversies.' " *Raines v. Byrd,* 521 U.S. 811, 818, 117 S.Ct. 2312, 138
> L.Ed.2d 849 (1997).

> Standing to sue is a doctrine rooted in the traditional understanding of a case or
> controversy. The doctrine developed in our case law to ensure that federal courts
> do not exceed their authority as it has been traditionally understood. See *id.,* at 820,
> 117 S.Ct. 2312. The doctrine limits the category of litigants empowered to maintain
> a lawsuit in federal court to seek redress for a legal wrong.[9]

---

[8] Doc. 1, p. 34, Prayer for Relief at ¶1, ¶4.
[9] *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), <u>as revised</u> (May 24, 2016) (additional internal citations omitted).

"The requisite personal interest that must exist at the commencement of litigation (standing) must continue through its existence (mootness)." [10] "Standing is determined as of the time that suit is filed."[11]

> Our cases have established that the "irreducible constitutional minimum" of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.[12]

Article III standing is not an affirmative defense that must be pled and proved by the Defendants – the Plaintiff bears the burden at every stage of litigation, including in his initial pleading, to establish his standing to pursue each of the claims in his lawsuit.

> The party invoking federal jurisdiction bears the burden of establishing these elements. Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation.[13]

In his complaint, Plaintiff alleges he was released from custody on January 20, 2021.[14] A prisoner's claims for equitable relief are generally rendered moot upon the prisoner's release from prison.[15] Because the Plaintiff was released from custody before he initiated the lawsuit, he lacked standing to sue for injunctive relief.[16] Additionally, as any future harm depends on a future arrest, conviction, and sentence to DPSC custody, the possibility of future harm is too speculative and remote to support Article III standing.[17]

---

[10] *Hancock Cty. Bd. of Supervisors v. Ruhr*, 568 F. App'x 295, 299 (5th Cir. 2014).

[11] *Energy Mgmt. Corp. v. City of Shreveport*, 397 F.3d 297, 302 (5th Cir. 2005) (*citing Pederson v. Louisiana State Univ.*, 213 F.3d 858, 870 (5th Cir.2000)).

[12] *Spokeo*, 136 S. Ct. at 1547 (internal citations omitted).

[13] *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992) (citation omitted).

[14] Doc. 1, p. 10, ¶42.

[15] *Walters v. Livingston*, 642 F. App'x 416, 418 (5th Cir. 2016) (citing *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *In re FEMA Trailer Formaldehyde Prods. Liab. Litig. (Miss. Plaintiffs)*, 668 F.3d 281, 286 (5th Cir. 2012)).

[16] *Hancock Cty*, *supra*.

[17] See *McNeal v. Louisiana Dep't of Pub. Safety & Corr.*, No. CV 18-736-JWD-EWD, 2020 WL 7059581, at *9 (M.D. La. Dec. 2, 2020) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983)).

Furthermore, within the eight page, 38-paragraph-long legal argument that forms "Count I" of Plaintiff's Complaint, Plaintiff explains that, in this case, "appropriate relief" under RLUIPA probably does <u>not</u> include declaratory or injunctive relief. [18] Plaintiff argues injunctive or declaratory relief might "be moot" such that money damages should be an available remedy to the Plaintiff.[19]  If that argument is not accepted as an outright admission that Plaintiff lacks standing to sue for prospective relief, it should at least be considered an admission that Plaintiff has not considered, analyzed, or <u>pled</u> that he has standing.

Considering the foregoing, all claims for non-monetary equitable relief including declaratory relief, injunctive relief, and other unnamed equitable relief, must be dismissed for lack of standing.

### III.    DPSC, Secretary LeBlanc, and Warden Myers, in their official capacities, are entitled to sovereign immunity from some of Plaintiff's claims.

"The Eleventh Amendment bars citizens' suits in federal court against States and their alter egos."[20]  DPSC and its officers in their official capacities are "alter egos" of the State of Louisiana.[21]  Plaintiff sues DPSC directly.[22] Furthermore, in the caption - but not the body of his Complaint - Plaintiff names James LeBlanc in his official capacity as DPSC Secretary and Marcus Myers, in his official capacity as Warden of the Raymond Laborde Correctional Center (RLCC).[23] As explained below, Plaintiff's claims for monetary relief under RLUIPA, the §1983 claims against DPSC, and the state law claims against DPSC are barred by the State's sovereign immunity.

---

[18] Doc. 1, pp. 10-18, ¶43 – ¶81.
[19] Doc. 1, pp. 17-18, ¶79-80.
[20] *Champagne v. Jefferson Par. Sheriff's Off.*, 188 F.3d 312, 313 (5th Cir. 1999) (citing *Voisin's Oyster House v. Guidry,* 799 F.2d 183, 185 (5th Cir. 1986)).
[21] *Id*. at 313-14.
[22] Doc. 1, p. 3, ¶7.
[23] Doc. 1, p. 1.

### A. RLUIPA claims against individual defendants and claims for money damages are barred.

Count I of Plaintiff's Complaint, the RLUIPA claim, is brought against all named defendants including LeBlanc and Myers, individually.[24]

> RLUIPA does not permit a claim against individual defendants in their individual capacities. See 42 U.S.C. § 2000cc-1. The statute expressly states that RLUIPA's scope is limited to a "program or activity that receives Federal financial assistance." *Id*. § 2000cc-(b)(1). In this case, the recipient of federal funds is the Louisiana Department of Public Safety and Corrections, not any individual defendant. Thus, because no individual defendant receives federal financial assistance as that term is used in the statute, Plaintiff cannot maintain a RLUIPA claim against a defendant in his or her individual capacity. See *Stewart v. Beach*, 701 F.3d 1322, 1333-34 (10th Cir. 2012).[25]

The RLUIPA claims against LeBlanc and Myers individually should be dismissed as frivolous.[26]

The lengthy legal argument in Count I of Plaintiff's Complaint does not contain a thesis or conclusion but, it appears to be an argument that Plaintiff is legally entitled to claim compensatory damages from the defendants under RLUIPA. [27]    In Paragraph 79 of the Complaint, Plaintiff, "implores this court to reinterpret RLUIPA's "appropriate relief" provision such that monetary damages are appropriate in limited circumstances where "injunctive or declaratory relief" relief would be moot."[28]  This Honorable Court does not have the authority to "reinterpret" RLUIPA; this Court is bound by precedent of the Fifth Circuit and United States Supreme Court.

Plaintiff acknowledges that, in *Sossamon v. Texas*, 563 U.S. 277 (2011), the United States Supreme Court determined that, RLUIPA did not abrogate the sovereignty of the states on claims for monetary damages.[29]  Pursuant to that precedent, the Defendants are entitled to sovereign

---

[24] Doc. 1, p. 10, Count I.  As noted above, the *caption* of the Plaintiff's Complaint indicates LeBlanc and Myers are sued both individually and in their official capacities.  *Id*. at p. 1.

[25] *Garcia v. LeBlanc*, No. CV 20-785-JWD-EWD, 2022 WL 193019, at *6 (M.D. La. Jan. 20, 2022) (footnoted citations included in body of quote).

[26] See *Id* (dismissing individual capacity RLUIPA claims under 28 U.S.C. §§1915, 1915A).

[27] Doc. 1, pp. 10-18, ¶43 – ¶81.

[28] Doc. 1, p. 18, ¶79.

[29] Doc. 1, p. 14, ¶61-64.

immunity from Plaintiff's demand for monetary relief under RLUIPA and those claims must be dismissed *with prejudice*.

"Overruling precedent is never a small matter."[30] "The Supreme Court has sole authority to overrule its own decisions, meaning that the courts of appeal must follow the Supreme Court's directly controlling precedent […]."[31] Likewise, the District Courts must follow the directly controlling precedent of the courts of appeal and the Supreme Court.

Absent any post-*Sossamon* ruling of the Supreme Court allowing a claim for money damages under RLUIPA by a private plaintiff against a nonconsenting State, state agency, or state official, *Sossamon* remains controlling. Therefore, any attempt to bring a claim for money damages under RLUIPA must be dismissed with prejudice, as barred by the state's sovereignty.

Furthermore, considering Plaintiff's lack of standing to sue for injunctive relief and the State's sovereign immunity from a claim for damages under RLUIPA, there is <u>no</u> available remedy under RLUIPA and Count I of Plaintiff's Complaint should be dismissed in its entirety.

**B. The §1983 claims against DPSC and RLCC should be dismissed as frivolous.**

Counts II, III, and IV, of Plaintiff's Complaint are claims brought under 42 U.S.C. §1983 against all of the named defendants, including DPSC and RLCC.[32] Section 1983 claims can only be brought against "persons" as the statute defines that term. "[N]either a State nor its officials acting in their official capacities are "persons" under § 1983."[33] <u>All</u> §1983 claims against DPSC

---

[30] *Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015).
[31] *Ballew v. Cont'l Airlines, Inc.*, 668 F.3d 777, 782 (5th Cir. 2012) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989)).
[32] Doc. 1, pp. 18-19 (Count II), p. 22, (Count III), p. 27 (Count IV).
[33] *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989).

and RLCC should be dismissed as frivolous.[34]  The §1983 claims <u>for monetary relief</u> [35] against

Secretary LeBlanc and Warden Myers, <u>in their official capacities,</u>[36] should also be dismissed as

frivolous.

      **C. All state law claims against DPSC and against LeBlanc and Myers, in their**
          **official capacities, should be dismissed for lack of jurisdiction.**

Counts VI-VIII in Plaintiff's Complaint are state law claims brought against "all

defendants", including DPSC, and Secretary LeBlanc and Warden Myers, in their official

capacities.[37]  DPSC and its officials in their official capacities are entitled to sovereign immunity

from suit under state law in federal court.  "The Supreme Court in *Pennhurst State School and*

*Hospital v. Halderman* held that sovereign immunity barred federal courts from hearing state law

claims brought in federal court against state entities." *Raj v. Louisiana State Univ.*, 714 F.3d 322,

329 (5th Cir. 2013) (citing *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 117,

104 S.Ct. 900, 79 L.Ed.2d 67 (1984)).  Thus, all state law claims against DPSC, LeBlanc in his

official capacity, and Myers in his official capacity should be dismissed without prejudice.[38]

**IV.**      **Conclusion on jurisdictional issues.**

Based on the foregoing jurisdictional arguments, the following counts should be dismissed:

1. Count I – RLUIPA

    a.  Plaintiff lacks standing to sue for prospective equitable relief; and

---

[34] See *Copeland v. Livingston*, 464 F. App'x 326, 330 (5th Cir. 2012).  See also *Porter v. Vannoy*, No. CV 19-691-JWD-SDJ, 2021 WL 3578466, at *3 (M.D. La. July 9, 2021), *report and recommendation adopted*, No. CV 19-691-JWD-SDJ, 2021 WL 3575854 (M.D. La. Aug. 12, 2021).

[35] In certain circumstances, which are not present here, state officials in their official capacities may be sued <u>for prospective equitable relief</u> under §1983.  *Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020) (discussing *Ex parte Young*, 209 U.S. 123, 167–68 (1908)).  As explained above, Plaintiff lacks standing to sue for prospective relief and, therefore, the *Ex parte Young* exception to sovereign immunity is inapplicable.

[36] State officials may be sued <u>individually</u> for monetary relief under §1983.  The personal-capacity claims against Secretary LeBlanc and Warden Myers are not barred by sovereign immunity but, as will be explained below, Plaintiff fails to plead plausible claims against them.

[37] Doc. 1, p. 31 (Count VI), p. 32 (Count VII), and p. 33 (Count VIII).

[38] The state law claims <u>for monetary relief</u> against LeBlanc and Myers <u>personally</u> are not barred by sovereign immunity.  However, as explained below, Plaintiff fails to plead a plausible state law claim against them.

    b. All claims for monetary relief are barred by the State's sovereign immunity.

2. Counts II, III, and IV – §1983 claims

    a. DPSC, RLCC, LeBlanc in his official capacity, and Myers in his official capacity, are not "persons" capable of being sued under §1983.

    b. All §1983 claims against DPSC and RLCC are frivolous and should be dismissed with prejudice.

    c. All §1983 claims for monetary relief against LeBlanc and Myers, in their official capacities, are also frivolous and should be dismissed with prejudice.

    d. Plaintiff lacks standing to sue for prospective injunctive relief.

    e. The §1983 claims <u>for money damages only</u> against <u>LeBlanc and Myers, individually,</u> should <u>not</u> be dismissed for lack of jurisdiction – but should be dismissed for failure to state a claim as explained below.

3. Counts VI, VII, and VIII – Louisiana law claims

    a. All claims under Louisiana law against DPSC are barred by sovereign immunity.

    b. All claims for injunctive relief under Louisiana law against all defendants are barred by sovereign immunity.

    c. Louisiana law claims <u>for money damages only</u> against <u>only LeBlanc and Myers</u> should not be dismissed for lack of jurisdiction, but should be dismissed for failure to state a claim as explained below.

## <u>MOTION TO DISMISS FOR FAILURE TO STATE A CAUSE OF ACTION</u>

The following counts, which are not subject to dismissal for a jurisdictional defect described above, remain for analysis of whether a cause of action has been stated.

1. Count V – claims against fictitious defendants

2. Counts II-IV - §1983 claims for <u>money damages only</u> against <u>LeBlanc and Myers, individually</u>; and

3. Counts VI-VIII – Louisiana law claims for <u>money damages only</u> against <u>LeBlanc and Myers, individually.</u>

**I. The Raymond Laborde Correctional Center must be dismissed from this suit.**

All claims against the prison must be dismissed with prejudice because it is not an entity with the capacity to be sued. Plaintiff alleges correctly that RLCC "is a Louisiana state prison

under the operation and control of the [DPSC]".[39]  Plaintiff pleads no facts whatsoever explaining the personhood of RLCC as required to state a claim under 42 U.S.C. §1983, or otherwise establishing its capacity to be sued.

Capacity to be sued is determined by the law of the forum state.[40] "In Louisiana, neither correctional centers nor sheriff's departments are legal entities capable of suing or being sued as the State of Louisiana has not granted them juridical status."[41]  Because it lacks capacity to be sued under Louisiana law, RLCC should be dismissed with prejudice from this suit.

## II.    The claims against all fictitious defendants should be dismissed

Plaintiff sues twenty (20) fictitious defendants, who are described as follows.[42]

Defendants John Does 1-10 and ABC Entities 1-10 are the fictitious name for individuals and entities believed to have contributed in some relevant and material way to Plaintiff's causes of action as alleged herein, but whose true identities are presently unknown to Plaintiff. Plaintiff will seek leave to amend his complaint to more fully identify these Defendants after conducting discovery, should the need arise.[43]

Plaintiff further describes the fictitious defendants within Count V of his complaint:

Defendants JOHN DOES 1-10 and ABC ENTITIES 1-10, are fictitious names for individuals and entities whose identities are unknown at present, but who constitute persons, partnerships, joint ventures, corporations, associations, or other forms of private or public entities who or which participated in the tortious and/or unconstitutional actions of the Defendants described herein, whether by way of their negligence, deliberate indifference, or in other ways as yet undetermined.[44]

The 20 fictitious defendants are sued under RLUIPA, 42 U.S.C. §1983, and Louisiana law.

---

[39] Doc. 1, ¶9.
[40] Fed. R. Civ. P. 17(b).
[41] *Cartwright v. Goodwin*, No. 5:17-CV-1669, 2018 WL 2124915, at *3 (W.D. La. Mar. 28, 2018), *report and recommendation adopted*, No. 5:17-CV-1669, 2018 WL 2123619 (W.D. La. May 8, 2018) (citing *Ruggiero v. Litchfield*, 700 F. Supp. 863, 865 (M.D. La. 1988)).See also *Ricks v. Louisiana State Penitentiary*, No. CV 19-701-JWD-SDJ, 2020 WL 5047412, at *2 (M.D. La. Aug. 3, 2020), *report and recommendation adopted*, No. CV 19-701-JWD-SDJ, 2020 WL 5046301 (M.D. La. Aug. 26, 2020).
[42] Doc. 1, p. 4, ¶11.
[43] *Id*.
[44] Doc. 1, p. 30, ¶138.

"Generally, a plaintiff may pursue § 1983 claims against only identified persons."[45] However, it is not prohibited.[46]  "Although some courts have allowed the fictitious designation of defendants where their true identities can be learned only through discovery, […], a plaintiff must identify potential defendants with enough specificity to enable the court to direct service of process"[47] or to show a reasonable probability the fictitious defendant will be identified in discovery.[48]

Plaintiff's Complaint does not contain facts describing the "relevant and material way" any of the 20 fictitious defendants allegedly contributed "to Plaintiff's causes of action."[49]  There are no facts in Plaintiff's complaint even indicating any of the 20 fictitious defendants exists or could possibly be liable to the Plaintiff.[50]  There is no apparent legitimate basis for joining any of the 20 fictitious defendants and all twenty of them, along with "Count V" of Plaintiff's Complaint, should be dismissed.

## III.    Defendants LeBlanc and Myers are entitled to qualified immunity from suit under §1983 and state law

---

[45] *Parker v. Gusman*, No. CV 16-1609, 2016 WL 3020914, at *1 (E.D. La. May 26, 2016) (citing *Francis v. Terrebonne Parish Sheriff's Office*, No. 08-4972, 2009 WL 4730707, at *3 (E.D. La. Dec. 9, 2009)).

[46] See e.g. *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

[47] *Myers v. Doe*, No. 3-10-CV-0493-P, 2010 WL 2367365, at *1 (N.D. Tex. Apr. 14, 2010), *report and recommendation adopted*, No. 3-10-CV-0493-P, 2010 WL 2367357 (N.D. Tex. June 7, 2010) (citing *Staritz v. Valdez,* No. 3–06–CV–1926–D, 2007 WL 1498285 at *2 (N.D. Tex. May 21, 2007)) (internal citation omitted).

[48] See e.g. *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (citing *Colle v. Brazos County, Tex.,* 981 F.2d 237, 243 n. 20 (5th Cir. 1993) ("Although the use of a "John Doe" is disfavored, it serves the legitimate function of giving a plaintiff the opportunity to identify, through discovery, unknown defendants.")  See also *Murphy v. Kellar*, 950 F.2d 290, 293 (5th Cir. 1992) ("It is conceivable that, if he were allowed to conduct discovery, Murphy would be able to adequately identify at least one of the officers allegedly involved in each of the beatings […] The information that would enable Murphy to identify his alleged attackers—e.g., duty rosters and personnel records—may be readily obtainable."); *Green v. Doe*, 260 F. App'x 717, 719 (5th Cir. 2007) (state ordered "to give the name of the officer assigned to the area where Green was housed on the date of the alleged incident"); *Rojero v. El Paso Cty.*, 226 F. Supp. 3d 768, 773 (W.D. Tex. 2016) (citing *Murphy*, 950 F.2d at 293) (holding "[t]he Court may allow discovery to take place when it is possible that a plaintiff might identify unknown defendants by: physical descriptions, partial names or nicknames, position, date, time or specifics of the incident, or from duty rosters and personnel records.")

[49] See Doc. 1, p. 6, ¶20 to p.10, ¶42.

[50] See e.g. *Smith v. Jaramillo*, 394 F. App'x 183, 185 (5th Cir. 2010) ("Smith's allegations and the record evidence fail to show an equal protection violation by any defendant, named or unnamed") (citing *Adkins v. Kaspar*, 393 F.3d 559, 566 (5th Cir.2004)).

Plaintiff sues Defendants LeBlanc and Myers under 42 U.S.C. §1983, claiming violations of the First Amendment,[51] Eighth Amendment,[52] and Fourteenth Amendment.[53] The Plaintiff also sues "all defendants" under Article I, Sections 2, 7, 8, and 20 of the Louisiana Constitution.[54] "Louisiana applies qualified immunity principles to state constitutional law claims based on '[t]he same factors that compelled the United States Supreme Court to recognize a qualified good faith immunity for state officers under § 1983.'"[55] Plaintiff alleges, "[b]y reason of the same conduct that violated Plaintiffs' federal constitutional rights, Defendants violated their state constitutional rights to liberty and due process and Defendants violated Plaintiff's right to be free of cruel and unusual punishment."[56] Because the Plaintiff's claims under the Louisiana Constitution are indistinguishable from her §1983 claims, the qualified immunity defense extends equally to all of the claims arising under the Louisiana Constitution.[57]

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[58] "Qualified immunity balances two important interests-- the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."[59]

---

[51] Doc. 1, p. 18, Count II.
[52] Doc. 1, p. 22, Count III.
[53] Doc. 1, p. 27, Count IV.
[54] Doc. 1, p. 31, ¶143.
[55] *Roberts v. City of Shreveport*, 397 F.3d 287, 296 (5th Cir. 2005) (citing *Moresi v. Dep't of Wildlife and Fisheries,* 567 So.2d 1081, 1093 (La.1990)).
[56] Doc. 1, p. 31. at ¶144.
[57] *Roberts*, *supra*.
[58] *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) *(quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).
[59] *Id.*

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[60] This Honorable Court may consider either prong to begin its analysis.[61] "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."[62]

"When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense."[63]  If either prong is resolved in favor of the defendant, the defendant is entitled to qualified immunity. The ultimate conclusion that the defendant is not entitled to qualified immunity "mandates a full *Saucier* inquiry."[64]

### A. Counts II and IV should be dismissed because Plaintiff's First Amendment rights were not violated.

Counts II and IV of Plaintiff's Complaint contain the claim that Plaintiff's right to free exercise of religion, which is protected by the First Amendment as made applicable to the States by the Fourteenth Amendment, was violated by the defendants.[65]  Plaintiff does not plead a separate Fourteenth Amendment due process claim; he merely alleges his "First Amendment fundamental right to free exercise of his religious beliefs was unconstitutionally infringed in violation of the Due Process Clause of the Fourteenth Amendment."[66]

Plaintiff succinctly articulates his First Amendment claim:

---

[60] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S. Ct. 2074, 2080, 179 L. Ed. 2d 1149 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)).
[61] *Id* (citing *Pearson*, 555 U.S. at 236, 129 S.Ct. at 818).
[62] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).
[63] *Cantrell v. City of Murphy*, 666 F.3d 911, 918 (5th Cir. 2012) (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir.2002) (*en banc*)).
[64] *Lytle v. Bexar County, Tex.*, 560 F.3d 404, 409 (5th Cir. 2009).
[65] Doc. 1, pp. 18-22 (Count II); pp. 27-30 (Count IV)
[66] Doc. 1, pp. 29-30, ¶135.

Plaintiff's First Amendment right to free exercise of his religion as a practicing Rastafarian was infringed upon through the unconstitutional forced cutting of Plaintiff's hair against his will and in contravention of his sincerely held religious beliefs by Defendants RLCC and Myers' enforcement of a policy by Defendants LA DoPS&C and LeBlanc which was already held by the Fifth Circuit in *Ware*, supra., to be in violation of RLUIPA.[67]

Plaintiff alleged the Fifth Circuit, in *Ware v. Louisiana Department of Corrections*, 866 F.3d 263

(5th Cir. 2017), "found that the Department's grooming policies, which prohibited 'dreadlocks',

violated RLUIPA."[68]

Even after the *Ware* decision, this Court consistently finds that the Department's grooming

policy does not violate the First Amendment.[69]  This Court explains:

With regards to the plaintiff's First Amendment claim, a prison policy or practice will not be found unconstitutional if it is reasonably related to a legitimate penological objective of the facility. *Hay v. Waldron*, 834 F.2d 481, 487–87 (5th Cir. 1987). This general statement of the law has been upheld when a regulation prevented a group of Muslim inmates from attending Jumu'ah, the central religious ceremony of the Muslim faith, similar to Christian Sunday services or Saturday services of the Jewish faith. *See O'Lone v. Estate of Shabazz*, 482 U.S. 342, 360 (1987). This rule has also been applied to regulations that required Rastafarians to cut their hair, even though keeping one's hair unshorn and unwashed is a tenet of the Rastafari religion. *See Scott v. Mississippi Dept. of Corrections*, 961 F.2d 77 (5th Cir. 1992), and *Hicks v. Garner*, 69 F.3d 22, 25 (5th Cir. 1995). As the to the plaintiff's First Amendment claims, *Scott* and *Hicks* are controlling.[70]

In light of the foregoing, Plaintiff does not plead a violation of his First Amendment rights,

Secretary LeBlanc and Warden Myers are entitled to qualified immunity and Counts II and IV of

Plaintiff's Complaint, should both be dismissed with prejudice.

**B. Count III of Plaintiff's Complaint, the Eighth Amendment claim, should also be dismissed.**

---

[67] Doc. 1, p. 19 ,¶85.

[68] Doc. 1, p. 8, ¶33.

[69] See e.g. *Porter v. Manchester*, No. CV 19-411-SDD-RLB, 2021 WL 389090, at *3 (M.D. La. Jan. 4, 2021), report and recommendation adopted, No. CV 19-411-SDD-RLB, 2021 WL 388831 (M.D. La. Feb. 3, 2021); *Milon v. LeBlanc*, 496 F. Supp. 3d 982, 987 (M.D. La. 2020); *Ceasar v. Louisiana Dep't of Corr.*, No. CV 17-1691-SDD-EWD, 2019 WL 3980644, at *5 (M.D. La. July 26, 2019).

[70] *Porter*, 2021 WL 389090, at *3.

Plaintiff also does not plead a violation of the Eighth Amendment.  Plaintiff alleges that, in violation of the Eighth Amendment, "Defendants LA DoPS&C and LeBlanc promulgated an unconstitutional grooming policy as a condition of Plaintiff's confinement within the LA DoPS&C-controlled prison [...]"[71]   Plaintiff further alleges the grooming policy constitutes "a cruel and unusual condition of confinement in contravention of his sincerely held religious beliefs" which was allegedly "maliciously enforce[ed]" against him by Warden Myers.[72]   Use of the phrases "condition of confinement", "cruel and unusual punishment", or other such terms of art, does not satisfy the burden of pleading an Eighth Amendment violation.[73]

In *Farmer v. Brennan*,[74] the Supreme Court generally explained the scope of the protections afforded to prisoners under the Eighth Amendment.

> The Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman,* 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981), but neither does it permit inhumane ones, and it is now settled that "the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment," *Helling* [*v. McKinney*, 509 U.S. 25, 31, 113 S.Ct. 2475, 2480, 125 L.Ed.2d 22 (1993)]. In its prohibition of "cruel and unusual punishments," the Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners. See *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992). The Amendment also imposes duties on these officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must "take reasonable measures to guarantee the safety of the inmates," *Hudson v. Palmer,* 468 U.S. 517, 526–527, 104 S.Ct. 3194, 3200, 82 L.Ed.2d 393 (1984). See *Helling, supra,* 509 U.S., at 31–32, 113 S.Ct., at 2480; *Washington v. Harper,* 494 U.S. 210, 225, 110 S.Ct. 1028, 1038–1039, 108 L.Ed.2d 178 (1990); *Estelle,* 429 U.S., at 103, 97 S.Ct., at 290. Cf. *DeShaney v. Winnebago County Dept. of Social Servs.,* 489 U.S. 189, 198–199, 109 S.Ct. 998, 1004–1005, 103 L.Ed.2d 249 (1989).

---

[71] Doc. 1, p. 24, ¶108.

[72] Doc. 1, pp. 25-26, ¶120.

[73] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (finding "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do") (citations omitted).

[74] *Farmer v. Brennan*, 511 U.S. 825, 832–33, 114 S. Ct. 1970, 1976, 128 L. Ed. 2d 811 (1994)

The Fifth Circuit has explained the two-part test for determining whether a plaintiff identified a violation of the Eighth Amendment:

> First, there is an objective requirement to demonstrate conditions "so serious as to deprive prisoners of the minimal measure of life's necessities," as when the prisoner is denied "some basic human need." *Woods v. Edwards,* 51 F.3d 577, 581 (5th Cir.1995); *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Second, under a subjective standard, it must be shown that the responsible prison officials acted with deliberate indifference to the prisoner's conditions of confinement. *Woods*, 51 F.3d at 581.[75]

Plaintiff's purported Eighth Amendment claim fails on both parts of the two-part test.

Plaintiff has not identified a basic human need that was allegedly deprived when he was required to cut his hair. A "basic human need" is one that is necessary to life such as sleep[76] or food,[77] such that deprivation thereof poses "a substantial risk of serious harm."[78] Plaintiff's claim that his hair was cut without his consent does not indicate the deprivation of any basic human need. Without the deprivation of a basic human need, furthermore, Plaintiff fails to allege either LeBlanc or Myers was deliberately indifferent to a substantial risk of serious harm. In sum, Plaintiff fails to plead an Eighth Amendment violation.

### C. Objective reasonableness of the conduct of LeBlanc and Myers

In addition to pleading that his Constitutional rights were violated, the Plaintiff must also plead conduct of each defendant that was objectively unreasonable in light of clearly established law. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [official] that his conduct was unlawful in the situation he confronted."[79] The conduct of each moving defendant must be considered independently.[80]

---

[75] *Chavarria v. Stacks*, 102 F. App'x 433, 435–36 (5th Cir. 2004)

[76] *Harper v. Showers*, 174 F.3d 716 (5th Cir.1999).

[77] *Talib v. Gilley*, 138 F.3d 211, 212 (5th Cir. 1998).

[78] *Farmer*, 511 U.S. at 828.

[79] *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

[80] *Meadours v. Ermel*, 483 F.3d 417, 421 (5th Cir. 2007) (citations omitted).

As explained above, this Honorable Court has consistently, even after the *Ware* decision, held that defendants are entitled to qualified immunity from a plaintiff's claim that his hair was forcibly cut.[81]  Thus, jurisprudence is clear that the conduct of the defendants was <u>not</u> objectively unreasonable.

## IV. State law claims against LeBlanc and Myers, individually.

As explained above, all state law claims against DPSC, RLCC, and LeBlanc and Myers, in their official capacities, are barred by the State's sovereign immunity and should be dismissed on that ground.  State law claims against LeBlanc and Myers, individually, are not barred by sovereign immunity.  However, as explained below, Plaintiff fails to state a cause of action under state law and the state law claims should be dismissed.

### A. Plaintiff failed to exhaust administrative remedies.

Louisiana's Prison Litigation Reform Act (LPLRA), La. R.S. 15:1181, *et seq*, governs Plaintiff's state law claims.  This Court has explained:

> Like the Federal PLRA, for state law claims, the Louisiana Prison Litigation Reform Act ("LPLRA") requires that "[n]o prisoner suit shall assert a claim under state law until such administrative remedies as are available are exhausted. If a prisoner suit is filed in contravention of this Paragraph, the court shall dismiss the suit without prejudice." La. R.S. 15:1184(A)(2) However, the LPLRA also states, *inter alia*, that "[s]tatus as a 'prisoner' is determined as of the time the cause of action arises. Subsequent events, including post trial judicial action or release from custody, shall not affect such status." La. R.S. 15:1181(6).[82]

---

[81] See e.g. *Porter*, 2021 WL 389090, at *3.
[82] *Morales v. McCulloh*, No. CV 18-808-SDD-RLB, 2019 WL 2774324, at *3 (M.D. La. July 2, 2019) (footnoted citations included in the body of the quotation).

Furthermore, unlike under the federal PLRA, which establishes a prisoner's failure to exhaust as an affirmative defense that must be proved by the defendants,[83] under Louisiana law, the prisoner-plaintiffs bear the burden of proving they exhausted administrative remedies prior to filing suit.[84]

This "prisoner suit", is a "civil proceeding with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison."[85] Thus, the Plaintiff was required to exhaust all available administrative remedies prior to filing suit.

> Louisiana's Administrative Remedy Procedure has two steps, and a prisoner has not exhausted his remedies until he has completed both. *See Dillon v. Rogers*, 596 F.3d 260, 265–66 (5th Cir. 2010). A prisoner first submits a request to the warden briefly setting out the basis for the claim and the relief sought—these are the "ARPs" discussed at length above. *Id.* at 265. The warden then has 40 days to respond. *Id.* at 265–66. If the inmate is dissatisfied with the warden's response, or no response is received within the 40-day time period, the inmate may proceed to the second step and appeal to the Secretary of the Louisiana Department of Public Safety and Corrections. *Id.* at 266. Critically, a prisoner who does not receive a timely response to his initial ARP is not prevented from filing a second-step ARP. *See id.*; LA. ADMIN. CODE tit. 22, pt. I, § 325(J)(1)(c) ("expiration of response time limits shall entitle the offender to move on to the next step in the process.").[86]

Plaintiff admits in his Complaint that he did not file an Administrative Remedy Procedure (ARP) grievance.

> Following this haircutting event of December 28, 2020, Plaintiff was placed in lockdown for the entire duration of his incarceration at RLCC, and he requested a grievance form daily from prison staff such that he could file a complaint in connection with the event, but he was never provided with one.[87]

---

[83] *Jones v. Bock*, 549 U.S. 199, 212 (2007).

[84] See LA DIST COURT RULES Rule 60.0(B) (requiring proof of exhaustion be attached to "any suit or appeal filed by an offender/prisoner subject to the CARP or the PLRA"). See also *Duhe v. St. John the Baptist Par. Sheriff's Dep't*, 17-599 (La. App. 5 Cir. 4/11/18), 245 So. 3d 1244, 1248, writ denied, 2018-0764 (La. 9/21/18), 252 So. 3d 898 (citing *Rochon v. Admin. Remedy Procedure*, 05-452 (La. App. 1 Cir. 3/24/06), 934 So.2d 67, 68, writ denied, 06-1383 (La. 1/26/07), 948 So.2d 162).

[85] La. R.S. 15:1181(2).

[86] *Bargher v. White*, 928 F.3d 439, 447 (5th Cir. 2019), as revised (July 2, 2019).

[87] Doc. 1, p. 10, ¶41.

Plaintiff avers he was incarcerated at RLCC from December 28, 2020 to January 20, 2021, a period of 24 days (including both December 28 and January 20). [88]  Plaintiff further admits that, prior to his detention at RLCC, Plaintiff filed at least one "formal complaint pursuant to Defendant LA DoSP&C's Administrative Remedy Procedure".[89]   Thus, Plaintiff was familiar with the ARP procedure.

Assuming for purposes of this argument only that the Plaintiff could not file an ARP before his release on January 20, 2021 because he did not have a form,[90] the Plaintiff had sufficient time after his release to file a timely ARP such that the alleged withholding of a form did not render the entire process unavailable.   To be timely, an ARP had to be submitted "within a 90 day period after an incident has occurred".[91]   The Plaintiff had approximately 67 days after his release during which to file a timely ARP. Plaintiff was still required to pursue his administrative remedies after his release from custody[92] and his failure to do so is dispositive of his state law claims.  Pursuant to La. R.S. 15:1184(b)(2), Plaintiff's state law claims should be dismissed without prejudice.

### B. Alternatively, Plaintiff's state law claims should be dismissed with prejudice for failure to state a claim upon which relief can be granted.

The same alleged conduct that forms the basis of all of Plaintiff's constitutional claims apparently forms the basis of the state tort claims.  In Count VII of Plaintiff's complaint, he alleges

---

[88] *Id.* at ¶42.

[89] Doc. 1, p. 7, ¶30.

[90] But see LA. ADMIN. CODE tit. 22, pt. I, § 325(G)(1)(a) ("The offender commences the process by completing a request for administrative remedy (form B-05-005-ARP-1) **or writing a letter to the warden**, in which he briefly sets out the basis for his claim, and the relief sought. For purposes of this process, a letter is: (a). any form of written communication which contains the phrase: 'This is a request for administrative remedy' or "ARP;' or (b). request for administrative remedy (form B-05-005-ARP-1) at those institutions that wish to furnish forms for commencement of this process.")

[91] *Id.*  at §325(G)(1).

[92] *Morales*, 2019 WL 2774324, at *3 n. 36 (citing *Dailey v. Travis*, 2004-0744 (La. 1/19/05), 892 So. 2d 17, 20 ("The fact that Dailey is no longer incarcerated has no effect on this matter.")).

"all defendants" are liable under Louisiana law for intentional infliction of emotional distress.[93] In Count VIII, Plaintiff alleges "all defendants" are liable under Louisiana law for negligence.[94] Adding further confusion to the shotgun pleading against "all defendants" without distinction, Plaintiff alleges "Defendants, either directly, or by and through its agents, directly and proximately caused Plaintiff's injuries, damages and losses."[95]  That shotgun pleading, which incorporates every single preceding allegation including the previous "Counts", lumps together all defendants including the 20 fictitious defendants, conclusorily avers vicarious liability on all defendants without explanation, and does not articulate what any defendant did to subject him to liability under the theories of state law presented, is so improper that it should be dismissed in its entirety.[96]

## V.    CONCLUSION

Considering the foregoing, this Honorable Court should grant Defendants' Motion and dismiss Plaintiff's complaint, in its entirety.  If Plaintiff is granted leave to amend the leave should be limited, however, because the following defects in the complaint cannot be cured by amendment:

1.  Plaintiff's lack of standing to sue for prospective equitable relief,

2.  Plaintiff's inability to sue LeBlanc and Myers, individually, under RLUIPA,

---

[93] Doc. 1, p. 32 (Count VII).

[94] Doc. 1, p. 33-35 (Count VIII).

[95] Doc. 1, p. 33, ¶163.

[96] See e.g. *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (holding "[w]hen the plaintiff's complaint uses blanket terms covering all the defendants, by lumping them together or calling them collectively "TDCJ," these allegations are properly disregarded unless the reference to the Executive Defendants can be clearly inferred.") (citing *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 & n. 14 (11th Cir.2015) (describing this form of "shotgun pleading" as a "sin" consisting of "asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions")).

3. The frivolity of Plaintiff's claims against DPSC and RLCC under 42 U.S.C. §1983, as well as the frivolity of Plaintiff's §1983 claims for money damages against LeBlanc and Myers, in their official capacities,

4. The sovereign immunity of DPSC and LeBlanc and Myers, in their official capacities, from suit for money damages under RLUIPA,

5. The sovereign immunity of DPSC and LeBlanc and Myers, in their official capacities, from suit in federal court under state law,

6. That RLCC is a prison, which lacks the capacity to be sued,

7. That the current state of the law precludes a finding that any of the Defendants violated the First Amendment,

8. That a nonconsensual haircut does not violate the Eighth Amendment, and

9. That Plaintiff's failure to exhaust administrative remedies is fatal to his state law claims.

The Defendants dispute that the Plaintiff will be able to state a claim upon which relief can be granted as a matter of law. But, if he is granted leave to try, it should be limited, at the very most, to claims for money damages against Secretary LeBlanc and/or Warden Myers, individually, under 42 U.S.C. §1983, the Louisiana Constitution, or state tort law.

Respectfully Submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

BY:  *s/Phyllis E. Glazer*
       **PHYLLIS E. GLAZER (#29878)**
       **ASSISTANT ATTORNEY GENERAL**

       **Louisiana Department of Justice**
       **Litigation Division, Civil Rights Section**
       1885 North Third Street, 4th Floor
       Post Office Box 94005 (70804-9005)
       Baton Rouge, Louisiana 70802
       Telephone:     225-326-6300
       Facsimile:     225-326-6495
       E-mail:     GlazerP@ag.louisiana.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that, on April 13, 2022, I electronically filed the foregoing using the Court's CM/ECF system, which will provide a notice of electronic filing to all counsel of record.  I further certify that all parties to this action are represented by CM/ECF participants.

       *s/Phyllis E. Glazer*
       **PHYLLIS E. GLAZER**